UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

PHILLIP VAUGHN,                    )
                                   )
        *Plaintiff*,               )
                                   )        Case No. 4:07-cv-51
v.                                 )        Judge Mattice
                                   )
CITY OF MANCHESTER, TENNESSEE,     )
and JASON T. WALKER, individually and )
in his official capacity,          )
                                   )
        *Defendants*.              )

## MEMORANDUM AND ORDER

Plaintiff Phillip Vaughn brings this action against Defendants City of Manchester and Jason T. Walker, individually and in his official capacity as a police officer for the City of Manchester, under 42 U.S.C. § 1983 for injuries sustained when Plaintiff was tackled by Defendant Walker during an altercation. Before the Court is Defendants' joint Motion for Summary Judgment [Court Doc. 36].

For the reasons set forth below, Defendants' Motion for Summary Judgment will be **GRANTED**.

## I.      STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply " 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Anderson*, 477 U.S. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, the Court must, on motion for summary judgment, determine whether a jury could reasonably find by a

preponderance of the evidence that the plaintiff's factual contentions are true.  *See id.*  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment.  *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    FACTS

The facts, viewed in the light most favorable to the Plaintiff, are as follows.

On September 10, 2006, Plaintiff Phillip Vaughn and his neighbor, William Raines, got into a fist-fight in front of Plaintiff's mobile home.  (Deposition of Phillip Vaughn ("Pl.'s Dep."), Court Doc. 53-2, p. 59-65.)  The 911 call center for the City of Manchester received a call requesting assistance for a fight at Plaintiff's home, possibly involving a gun. (Affidavit of Tiffany Gray ("Gray Aff."), Court Doc. 42-1, ¶¶ 2, 5.)  The call center sent out a police dispatch seeking assistance for the fight.  (*Id.* ¶ 5.)  The dispatch stated that there was possibly a gun involved.  (*Id.*)  Defendant Jason Walker, a police officer employed by the City of Manchester, responded to the dispatch.  (Affidavit of Jason Walker ("Walker Aff."), Court Doc. 40, ¶¶ 8-9.)

When Walker arrived at Plaintiff's home, he observed two persons fighting approximately thirty yards from the street; Plaintiff was facing away from Walker while Raines was facing towards him.  (Walker Aff. ¶ 11.)  Walker ran towards the men and saw Plaintiff swing at Raines.  (*Id.* ¶ 12.)  Walker did not see a gun.  (*Id.* ¶ 16.)  Both of Raines's

hands were in the air and visible to Walker. (*Id.* ¶ 13.) Walker could not, however, see Plaintiff's left hand.[1] (*Id.*) Walker also noticed that other individuals were nearby the fight, including a young girl. (*Id.* ¶ 18.)

Walker ran towards Plaintiff and Raines and tackled or speared Plaintiff from behind. (Pl.'s Dep. at 63; Deposition of William Raines, Court 51-2, p. 51.) Plaintiff was not aware of Walker's presence before he was tackled; he did not hear or see him arrive. (Pl.'s Dep. at 63.) Walker did not announce his presence before tackling Plaintiff and there were no lights or sirens indicating police presence. (*Id.* at 63-65.)

Once Plaintiff and Walker were on the ground, Walker put Plaintiff in handcuffs and told him that he would be going to jail. (Pl.'s Dep. at 80.) Plaintiff told Walker that he was hurt and needed an ambulance. (*Id.*) Walker called for an ambulance which took Plaintiff to the emergency room where he was treated for a broken hip. (Walker Aff. ¶ 21; Pl.'s Dep. at 79-81.)

## III.    ANALYSIS

As an initial matter, it is unclear from the face of the Complaint whether Plaintiff has asserted a claim against the Manchester City Police Department. (Court Doc. 1.) Manchester City Police Department is not named as a Defendant in the Complaint's caption, but the body of the Complaint states: "The Defendant, Manchester City Police Department, is responsible for the policies, practices, and customs of its police officers, as well as the hiring, training, supervision, control and discipline of all of its officers." (*Id.* ¶ 7.)

---

[1]      A more detailed discussion of whether this fact is genuinely disputed is contained in Section III.A. below.

Construing Plaintiff's Complaint liberally, the Court finds that the Complaint purports to state a claim against the Manchester City Police Department.

A police department, however, is not a proper defendant in a § 1983 action. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). In Tennessee, municipal police departments are not separate governmental entities but are components of the municipal government. *See Metropolitan Gov't of Nashville and Davidson County v. Metropolitan Employee Benefit Bd.*, 2007 WL 1805151, *8 (Tenn. Ct. App. June 22, 2007). All claims brought against the Manchester City Police Department are, therefore, redundant of, and properly brought against, the City of Manchester. Accordingly, all claims against the Manchester City Police Department are **DISMISSED WITH PREJUDICE** and the Manchester City Police Department is **DISMISSED WITH PREJUDICE** as a party defendant to this action.

Similarly, with respect to Plaintiff's § 1983 claims against Defendant Jason Walker in his official capacity, the Court notes that "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *see also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). Thus, the § 1983 claims against Defendant Walker in his official capacity are actually claims against the City of Manchester and are redundant in light of identical claims brought against the City. Therefore, Plaintiff's § 1983 claims against Walker in his official capacity are **DISMISSED WITH PREJUDICE**.

Plaintiff alleges in his Complaint that his rights under the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution were violated. (Court Doc. 1 at 4.) The

Court notes that the Eighth Amendment's protections apply only to post-conviction inmates. *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005); *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992). As Plaintiff's § 1983 claims relate only to the degree of force used to effectuate his arrest and not to any post-conviction treatment, Plaintiff cannot sustain an Eighth Amendment claim. Accordingly, Plaintiff's § 1983 claims under the Eighth Amendment are **DISMISSED WITH PREJUDICE**.

Moreover, the United States Supreme Court has held: "Where a particular Amendment 'provides an explicitly textual source of constitutional protection' against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing those claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Conner*, 490 U.S. 386, 395 (1989)). Thus, if the Fourth Amendment explicitly applies to an alleged constitutional deprivation, the court must analyze that deprivation under the specific provisions of the Fourth Amendment rather than the more generalized Fourteenth Amendment. *See id.*

The United States Court of Appeals for the Sixth Circuit has held: "If the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). Because Plaintiff was undisputedly a free man at the time of his encounter with Walker, he is protected by the Fourth Amendment. The Fourteenth Amendment, which has more stringent standards for showing a violation, does not apply. *See Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001) (noting that a plaintiff must surpass a

substantially higher hurdle to show excessive force under the Fourteenth Amendment than under the Fourth Amendment). Accordingly, Plaintiff's claims under the Fourteenth Amendment are **DISMISSED WITH PREJUDICE**.

The following claims remain pending: (1) Plaintiff's § 1983 claim for excessive force against Defendant Walker in his individual capacity and (2) Plaintiff's § 1983 claim for governmental liability against the City of Manchester. The Court will address each in turn.

**A.     § 1983 Claim Against Walker in his Individual Capacity**

Plaintiff claims that Defendant Walker violated his constitutional right to be free from excessive force in violation of the Fourth Amendment. (Court Doc. 1 ¶ 13.) Defendants argue that Walker's actions were objectively reasonable and therefore did not violate any constitutional right. (Court Doc. 37 at 15.) Defendants also claim that, should the Court find that Walker's actions were a constitutional violation, then Walker is entitled to qualified immunity because any such right was not clearly established. (*Id.* at 18.)

The key inquiry in an excessive force claim is whether the degree of force used was objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 394, 396-97 (1989); *Bass v. Robinson*, 167 F.3d 1041, 1045 (6th Cir. 1999); *Martin v. Heideman*, 106 F.3d 1308, 1311-12 (6th Cir. 1997). The existence of excessive force ordinarily presents a jury question, unless only one reasonable determination is possible. *See Bass*, 167 F.3d at 1046.

"The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Thus, the Court must take into account the fact that "police officers are often forced to make split-second judgments – in

circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97. "[T]he right to make an arrest . . . carries with it the right to use some degree of physical coercion or threat thereof to effect it," and "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Id.* at 396 (internal quotation marks and citation omitted).

In determining whether a use of force was excessive, the Court considers the following factors: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect was actively resisting arrest. *Graham*, 490 U.S. at 396; *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992). This list of factors is not exhaustive, however, and the ultimate question is whether the "totality of the circumstances" justified the use of force. *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2005).

Although Walker claims to have announced his presence prior to tackling Plaintiff, Plaintiff claims that he did not see Walker coming and did not know that Walker was there. (Pl's Dep. at 69-70.) Taking the evidence in the light most favorable to the Plaintiff, the Court finds that Plaintiff was not actively resisting arrest or attempting to avoid arrest when he was tackled by Walker. This factor weighs in favor of finding that Walker's use of force was a constitutional violation.

The other two factors, however, weigh against finding a constitutional violation. It is undisputed that Plaintiff was fighting with Raines when Walker arrived on the scene. As Walker approached the fight, he saw Plaintiff swing at Raines. (Walker Aff. ¶ 12.) It is also

undisputed that Walker was dispatched to a scene involving a fight with the possible presence of a gun. (Gray Aff. ¶¶ 2, 5.)

Walker's preliminary investigation report states that Plaintiff was accused of committing aggravated assault. (Deposition of Jason Walker, Court Doc. 60, ex. 3.) In Tennessee, aggravated assault involves the use or display of a weapon while causing another person to reasonably fear imminent bodily injury. Tenn. Code Ann. § 39-13-101 (defining assault); Tenn. Code Ann. § 39-13-102 (defining aggravated).

Plaintiff contends that there is a factual dispute with regard to whether Walker reasonably believed that he had a gun. (Court Doc. 57 at 8-9.) Plaintiff bases this argument on the fact that the first time Walker mentioned that he couldn't see Plaintiff's left hand as he approached the scene was in Walker's affidavit submitted in support of his Motion for Summary Judgment. Walker did not mention that he could not see Plaintiff's left hand in either of his reports filed immediately after the incident or in his deposition.

Plaintiff admits that he did not specifically ask Walker about whether he could see Plaintiff's left hand during the deposition. A witness at a deposition has no affirmative duty to volunteer information; the witness is required only to answer those questions that are asked. *Aerel, S.R.L.*, 448 F.3d at 907 (citing *Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999) (stating that the deponent "had not duty to volunteer information during the deposition absent a question from plaintiffs' counsel seeking that information.")) Moreover, Walker contends that he did not mention whether or not he could see Plaintiff's left hand in his prior reports because the reports were made for the purpose of outlining the actions of the suspects – Plaintiff and Raines – and not to detail his observations and beliefs. (Court Doc. 71 at 2.)

Plaintiff offers no evidence to dispute Walker's contention that he could not see Plaintiff's left hand as he approached the scene. Accordingly, there is no genuine issue of fact with regard to whether Walker could have reasonably believed that Plaintiff had a gun in his left hand. Moreover, it is undisputed that Plaintiff was facing away from Walker as Walker approached the scene. Even if Walker had seen both of Plaintiff's hands, a reasonable officer in his position could still have believed that Plaintiff may have had a gun on his person. Based on information he had received from the police dispatcher, Walker knew that there was possibly a gun involved in the fight and had not performed a full pat-down of either Plaintiff or Raines. Given these facts, a reasonable officer in Walker's position would have had probable cause to believe that Plaintiff was committing aggravated assault upon approaching the scene.

Aggravated assault is a serious and violent crime. *Zantello v. Shelby Twp.*, 2008 WL 1986702, *4 (6th Cir. May 6, 2008) (aggravated assault is a violent crime). In *Goodrich v. Everett*, 193 Fed. App'x 551, 555 (6th Cir. 2006), the Sixth Circuit held that the severity and the violent nature of the crime at issue in that case – aggravated domestic assault – weighed in favor of finding that it was not unreasonable for an officer to tackle the suspect in order to effectuate his arrest. Similarly, the undisputed facts of this case show that a reasonable officer could have suspected Plaintiff of having committed aggravated assault, which weighs in favor of finding that Walker's use of force was not unreasonable.

Moreover, a reasonable officer in Walker's position could have believed that Plaintiff posed an immediate threat to the safety of others. Again, it is undisputed that Walker was responding to a fight that possibly involved a weapon. It is also undisputed that there were other people in close proximity to the Plaintiff – including a young girl. (Walker Aff. ¶ 18.)

The presence of a gun during a fight can easily put the safety of others in danger. *C.f. United States v. Perry*, 114 Fed. App'x 668, 670 (6th Cir. 2004) ("the presence of a gun in any bank robbery puts someone's life in jeopardy.") In *Thacker v. Lawrence County*, 182 Fed. App'x 464, 471 (6th Cir. 2006), the Sixth Circuit held that officers responding to a 911 call involving a man with a gun "had a legitimate concern for the safety of those in the area, as well as for their own safety." Accordingly, the Court finds that a reasonable officer in Walker's position could have believed that Plaintiff was an immediate threat to the safety of others.

Plaintiff argues that the Court must consider the fact that he did not actually have a gun on his person when he was tackled by Walker. In resolving Plaintiff's excessive force claim, however, the Court must focus on "the moment immediately preceding the" use of force and the officer's knowledge at that moment. *Bouggess v. Mattingly*, 482 F.3d 886, 890 (6th Cir. 2007). It is undisputed that Walker was informed by his dispatcher that there was the possibility of a gun being involved in the fight. Moreover, the Court has found that there is no genuine dispute over whether Walker could see Plaintiff's left hand prior to tackling Plaintiff. Accordingly, in the moment immediately proceeding Walker's use of force, he had a reasonable basis to believe that Plaintiff may have been armed. The fact that he later learned that Plaintiff was not armed does not affect the Court's excessive force analysis. A reasonable officer in Walker's position, with Walker's knowledge based on the dispatch report, could have believed that Walker was armed and feared for the safety of others.

Reviewing the case law on whether tackling a suspect to effectuate an arrest constitutes excessive force, the Court concludes that the totality of the circumstances in

this case are similar to those cases in which courts have found no constitutional violation. *See*, *e.g.*, *Lyons v. City of Xenia*, 417 F.3d 565, 578 (6th Cir.2005) (finding that tackling of plaintiff did not amount to excessive force when the officer responded to a distressed call for backup help from a fellow officer and entered the house to find the plaintiff and the officer in close proximity and yelling at each other); *McVay v. Sisters of Mercy Health Sys.*, 399 F.3d 904, 908-09 (8th Cir.2005) (holding that tackling did not amount to excessive force given that "[plaintiff] was disoriented and exhibiting signs of lacking mental control, that he was barreling toward glass doors that [the police officer] knew did not open, and the rapid pace of events as [the police officer] raced to reach [the plaintiff].")

In many of the cases in which the tackling of a suspect was found to be excessive force, the crime at issue was less severe than that involved here, *see*, *e.g.*, *Bertoni v. Wamback*, 2007 WL 2752370, *5 (E.D. Mich. Sept. 21, 2007) (tackling was excessive force when plaintiff being arrested for the "relatively minor infraction" of disorderly conduct); *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1073 (E.D. Mich. 2001) (tackling was excessive force when plaintiff had not committed a crime); *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir.2003) (holding that it was objectively unreasonable to throw a lone woman to the ground for protesting a search warrant served by twelve IRS agents), or the officers did more than just tackle the plaintiff. *See*, *e.g.*, *Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002) (finding a constitutional violation for summary judgment purposes where plaintiff alleged that officers tackled him, hit him, and slammed his head into the floor three times).

Considering the relevant case law on excessive force, the Court concludes that the totality of the circumstances of this case lean in favor of finding no constitutional violation.

A reasonable officer in Walker's position could have suspected Plaintiff of committing a serious and violent offense and also could have reasonably feared for the safety of others based on the possible presence of a weapon.

Plaintiff claims that the effect of the force used on him – that the tackle broke his hip – shows that the use of such force was excessive. (Court Doc. 57 at 8.) The Sixth Circuit, however, "has specifically rejected extent of injury as a crucial factor in a § 1983 excessive force claim." *Kuehne v. Hugan*, 1995 WL 608169, *3 (6th Cir. Oct. 16, 2005) (citing *Patrick v. City of Detroit*, 906 F.2d 1108 (6th Cir. 1990)). Accordingly, the Court need not consider the extent of Plaintiff's injury in determining whether Walker used excessive force against Plaintiff. *Id.* (holding that district court's failure to consider the extent of plaintiff's injury was not erroneous).

Plaintiff relies heavily on his contention that Walker's use of "hard hands" in tackling Plaintiff violated accepted police policies and the City's use of force continuum. (Court Doc. 57 at 10.) The Court's analysis of whether the degree of force used was excessive, however, is not determined by whether an officer followed police procedures. The inquiry is whether a reasonable officer in the defendant's position would have considered the degree of force used excessive considering the totality of the circumstances. *Goodrich v. Everett*, 193 Fed. App'x 551, 555 (6th Cir. 2006) (citing *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004)). Moreover, officers "need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable." *Lyons*, 417 F.3d at 556 (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). The Court can find no Sixth Circuit case that turns on

whether the officer's actions violated police procedure or a use of force continuum as the basis for determining whether such force was excessive under the Fourth Amendment. Accordingly, Plaintiff's contentions that Walker violated police procedures and that Walker should have used less force to effectuate his arrest are not compelling.

Plaintiff also claims that summary judgment is improper because there are a number of facts are in dispute. (Court Doc. 57 at 10.) A court should deny summary judgment, however, only when factual disputes are material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986) ("By its very terms, [the summary judgment standard] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

Plaintiff correctly asserts that there is a factual dispute with regard to whether Walker announced his presence prior to tackling Plaintiff. Whether Walker announced his presence prior to tackling Plaintiff is immaterial because the Court concludes that, even assuming that Walker did not announce his presence, the degree of force used by Walker was not objectively unreasonable.

Plaintiff also claims that the factual dispute over whether Plaintiff "ever succeeded in striking Raines after he came into the view of Officer Walker" precludes summary judgment. Regardless of whether Plaintiff connected on his attempt to strike Raines, however, Plaintiff does not dispute that he was at least attempting to hit Raines. In Tennessee, one commits assault when they cause someone to reasonably fear imminent bodily injury. Tenn. Code Ann. § 39-13-101 (defining assault). An attempt to hit someone,

even if unsuccessful, could cause that person to reasonably fear imminent bodily injury. Accordingly, the fact that Plaintiff may never have actually landed a punch on Raines in Walker's presence does not alter the fact that a reasonable officer in Walker's position would have had probable cause to believe that Plaintiff was committing aggravated assault.

Considering all of the above, the Court finds that a reasonable officer in Walker's position would have suspected Plaintiff of a serious and violent crime and would have feared for the safety of others. Given those findings, the Court further finds that a reasonable officer in Walker's position would have thought that tackling Plaintiff was a reasonable use of force. Accordingly, Walker's tackling of Plaintiff did not violate Plaintiff's Fourth Amendment rights.

Because the Court finds that there was no constitutional violation, it need not consider whether any supposed violation was of a clearly established right for qualified immunity purposes. *Goodrich v. Everett*, 193 Fed. App'x 551, 557 (6th Cir. 2006). Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's claims against Defendant Jason Walker in his individual capacity and such claims are **DISMISSED WITH PREJUDICE**.

### B.      § 1983 Claims Against the City of Manchester

Plaintiff also brings a § 1983 claim against the City of Manchester based on the City's failure to hire, train, supervise, control, and discipline its officers. (Court Doc. 57 at 1.) It is well-established that a governmental entity cannot be held liable under § 1983 on a theory of *respondeat superior. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Plaintiff does not contest this point of law and apparently does not dispute Defendants'

assertion that Plaintiff's § 1983 claims against the City, to the extent they are based on such theory, should be dismissed. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's § 1983 claims against the City to the extent such claims are based on a theory of *respondeat superior*, and such claims are **DISMISSED WITH PREJUDICE**.

The City seeks the dismissal of Plaintiff's § 1983 claims against it to the extent such claims are based on an alleged unconstitutional policy, custom or practice. (Court Doc. 37 at 23-24.) Although a governmental entity cannot be held liable under § 1983 on the basis of a theory of *respondeat superior*, such an entity can be liable under § 1983 "when execution of [the entity's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [Plaintiff's] injury." *Monell*, 436 U.S. at 694. To be held liable, such policy or custom of the entity must be the "moving force" behind the constitutional violation. *Id.* In this instance, Plaintiff alleges that the City's failure to adequately train, supervise, and control Defendant Walker is the official policy that caused harm to Plaintiff. (Court Doc. 57 at 1.)

Plaintiff has presented no evidence of any inadequacies in the training programs provided by the City. Nor is there evidence in the record of any policy or custom of the City's approval of the use of excessive force. In fact, Plaintiff does not even argue in favor of municipal liability in his response to Defendants' Motion for Summary Judgment. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's § 1983 claims against the City of Manchester and such claims are **DISMISSED WITH PREJUDICE**.

**IV.    CONCLUSION**

For the reasons stated above, Defendants' Motion for Summary Judgment [Court Doc. 36] is **GRANTED**.  Plaintiff's claims are **DISMISSED WITH PREJUDICE**.  The Clerk shall close the case.

SO ORDERED this 13th day of August, 2008.


_____ */s/Harry S. Mattice, Jr.* _____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE